**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | **CRIM. NO. JKB-09-0288** |
| **AVON BANKS,** | * | |
| **Defendant.** | * | |

* * * * * * * * * * * *

**MEMORANDUM AND ORDER**

Avon Banks is presently serving a sentence of 262 months' imprisonment for conspiracy to violate the Racketeer Influenced and Corrupt Organizations ("RICO") Act. Presently pending before the Court is Banks' Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582, or, Alternatively, for Sentencing Reduction Pursuant to Section 404 of the First Step Act. (ECF Nos. 1998, 2000). The gravamen of these Motions is that several changes in applicable law have dramatically shifted the sentencing landscape from where it was when Banks was originally sentenced. Banks argues that both the 18 U.S.C. § 3582(c)(1)(A) and Section 404 of the First Step Act provide vehicles to a resentencing under the now-applicable legal frameworks. He further argues that this resentencing should be informed by his personal history; his age at the time of incarceration; his significant rehabilitation in prison; and sentence reductions received by several of his codefendants. (*Id.* at 17–42.) Banks concludes that consideration of these factors, as well as the other factors enumerated in 18 U.S.C. § 3353(a) supports a reduction of his sentence to "time served or to 168 months of imprisonment." (*See* ECF No. 2000 at 3.)[1]

[1] It is unclear whether this request is in the alternative or a quantification of the sentence that would be implicated by a time served sentence reduction. In any case, Banks' briefing makes clear that his primary position is a time-served reduction of his sentence.

While the Government disputes whether Banks has established grounds for compassionate release, it agrees that he would be entitled to resentencing under Section 404 of the First Step Act. (*See* ECF No. 2017 at 2–12.) It also agrees that Banks' Guidelines calculations are significantly lower under presently applicable law. (*See id.* at 4–5.) It disagrees, however, on how the remaining facts of this case affect the 18 U.S.C. § 3553(a) analysis. In contrast to Banks' position, the Government argues that those factors support a more modest sentence reduction than that suggested by Banks, to 226 months' imprisonment. (*See id.* at 18.) The present Motion is fully briefed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, Banks' Motion is GRANTED IN PART and an Amended Judgment shall issue reducing his sentence to 188 months' imprisonment.

## *I. Eligibility Under Section 404 of the First Step Act*

"The First Step Act provides that a sentencing court 'may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed.'" *United States v. Wirsing*, 943 F.3d 175, 180 (4th Cir. 2019) (quoting First Step Act § 404(b), 132 Stat. at 5222). A "covered offense is a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 [and] that was committed before August 3, 2010." *Id.* The parties agree that Banks' present sentence was imposed for a "covered offense" and that he is accordingly eligible for a Section 404 sentence reduction. (*See* ECF Nos. 2000 at 16, 2017 at 11.) As such, the Court does not consider whether Banks would be independently eligible for a sentencing reduction under 18 U.S.C. § 3582(c)(1)(A). Rather, it turns to consideration of whether and to what extent Banks' sentence should be reduced.

## *II. Section 404 Sentence Reduction*

Even where a defendant's offense qualifies for a sentencing reduction under Section 404, "the decision whether to grant any reduction under the Act 'is entrusted to the district court's discretion.'" *United States v. Webb*, 5 F. 4th 495, 498 (4th Cir. 2021). In exercising this discretion, "a court must [ ] 'consider a defendant's arguments, give individual consideration to the defendant's characteristics in light of the 18 U.S.C. § 3553(a) factors, determine whether a given sentence remains appropriate in light of those factors, and adequately explain that decision.'" *Id.* (quoting *United States v. Collington*, 995 F.3d 347, 360 (4th Cir. 2021)) (cleaned up). Particularly relevant here, a district court must both "engage in a brief analysis that involves the recalculation of the Sentencing Guidelines in light of 'intervening case law' . . . and a brief reconsideration of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Lancaster*, 997 F.3d 171, 175 (4th Cir. 2021) (internal quotation marks and citations omitted). In the latter inquiry, the Court may "take into account a defendant's conduct after his initial sentencing." *Id.* (citing *United States v. Chambers*, 956 F.3d 667, 674 (4th Cir. 2020)).

### *A. Intervening Case Law*

Banks was initially sentenced at an offense level of 34 and a criminal history category of VI resulting in a Guidelines range of 262-327 months. *See* U.S. SENT'G GUIDELINES MANUAL, *Sentencing Table* (U.S. SENT'G COMM'N 2010). However, two intervening changes in law significantly impact these Guidelines calculations. First, the parties agree that Banks was subject to a career offender enhancement that would no longer be applicable, reducing both his offense level and criminal history category. *See id.* § 4B1.1(b) (mandating minimum offense levels and a criminal history category of VI for persons subject to a career offender enhancement). Second, Amendment 782, effective November 1, 2014, reduced the base offense levels for offenses

calculated based on the drug quantity table. *See* U.S. SENT'G COMM'N, Amendment 782 (Nov. 1, 2014). Despite agreeing on both of these predicates, the parties (at least facially) disagree on Banks' final offense level and criminal history category under present law. Having considered the parties' arguments, the Court concludes that, if sentenced today, Banks would have an offense level of 30 and a criminal history category of V resulting in a Guidelines range of 151-188 months.

### *1. Career Offender Status*

When Banks was originally sentenced, he was subject to a career offender enhancement under Guidelines § 4B1.1. *See* U.S. SENT'G GUIDELINES MANUAL § 4B1.1 (U.S. SENTENCING COMM'N 2021) (hereinafter ("USSG")). However, to qualify for this enhancement, "the instant offense of conviction [must be] a felony that is either a crime of violence or a controlled substance offense[.]" *Id.* Since Banks' original sentencing, the Fourth Circuit has held that conspiracy under 21 U.S.C. § 846 is *not* a "controlled substance offense" within the meaning of USSG § 4B1.2(b). *See United States v. Norman*, 935 F.3d 232, 237–38 (4th Cir. 2019). Banks argues that the reasoning in *Norman* extends to the conclusion that a RICO conspiracy involving underlying drug offenses similarly cannot be a "controlled substance offense" under USSG § 4B1.2(b). The Court agrees.

Specifically, the *Norman* court reaffirmed the principle that although USSG § 4B1.2 extended to certain conspiracy offenses, "'an overt act is an element of the generic definition of conspiracy' as incorporated into § 4B1.2." *Id.* at 237 (quoting *United States v. McCollum*, 885 F.3d 300, 308 (4th Cir. 2018)). In contrast, "'conspiracy' under § 846 does not require an overt act." *Id.* at 238 (citing *United States v. Shabani*, 513 U.S. 10, 11 (1994)). Thus the Fourth Circuit concluded that "a 'conspiracy' conviction under § 846 is a categorical mismatch to the generic

crime of conspiracy enumerated in § 4B1.2(b)" and could not be the subject of a career offender enhancement. *Id.* at 239.

Like § 842, "the RICO conspiracy statute contains 'no requirement of some overt act or specific act.'" *United States v. Cornell*, 780 F.3d 616, 624 (4th Cir. 2015) (quoting *Salinas v. United States*, 522 U.S. 52, 63 (1997)). Thus, as with § 842, RICO conspiracy cannot qualify as a "controlled substance offense" under USSG § 4B1.2 and cannot, therefore, be the type of "instant offense of conviction" that qualifies for a career offender enhancement under the Guidelines. *See* USSG § 4B1.1(a) ("A defendant is a career offender if [*inter alia*] . . . the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense."); *see also United States v. Lisbon*, 276 F. Supp. 3d 456, 459 (D. Md. 2017) (holding based on similar reasoning that "Lisbon's conviction for RICO conspiracy does not constitute a 'controlled substance offense' subject to enhancement under the career offender provision."). The Government agrees that, at least for purposes of the presently pending Motion, "[Banks] would not be a career offender and that, if sentenced today, his sentencing range would be substantially lower." (ECF No. 2017 at 4.)

***2. Amendment 782***

Banks' sentencing range is also affected by the changes to the Guidelines' drug quantity table made by Guidelines Amendment 782. *See* USSG § 2D1.1(c). "Amendment 782 lowered the offense levels for drug offenses involving certain quantities of drugs." *United States v. Bornales*, 639 F. App'x 169, 170 (4th Cir. 2016). Banks argues that these changes reduce the base offense level for his underlying drug trafficking conduct to 30 on one of two theories. First, he argues that a base offense level of 30 is supported by the quantities of drugs stipulated in his Plea Agreement. (*See* ECF No. 2000 at 13.) In his Plea Agreement, the parties agreed that "the racketeering activity

of drug trafficking involved at least 500 grams but less than 1.5 kilograms of cocaine base." (ECF No. 523 at 5.) On the present drug quantity table, this amount spans two different offense levels, as the modern table assigns an offense level of 32 for offenses involving "[a]t least 840 G but less than 2.8 KG of Cocaine Base" but an offense level of 30 for offenses involving "[a]t least 280 G but less than 840 G of Cocaine Base." USSG § 2D1.1(c). Banks argues that under principles of lenity, the Court should resolve this ambiguity to the lower possible offense level. (ECF No. 2000 at 13.)

Second, and alternatively, Banks argues that the drug quantities reported in his Presentence Investigation Report "500 grams of cocaine base and 1 kilogram of heroin" would also calculate to a base offense level of 30. (*See* ECF No. 2000 at 12 n.9 (citing PSR ¶ 15).) Although the Government does not explicitly endorse either theory, it agrees that Banks is subject to a "[b]ase offense level [of] 30 . . . based on weight of narcotics in the offense." (ECF No. 2017 at 4.) The parties also agree that this offense is subject to a two-level upward adjustment due to the presence of a firearm—resulting in an adjusted offense level of 32. *See* USSG § 2D1.1(b)(1); (*see also* ECF No. 2000 at 13; ECF No. 2017 at 5.)

***3. Effect of Changes on Final Offense Level***

Though the parties agree on the various changes in law applicable to Banks' sentence, they appear to disagree on whether those changes, along with facts that have remained unchanged, result in a final offense level of 29 or 30. (*Compare* ECF No. 2000 at 13, *with* ECF No. 2017 at 5.) However, a review of the parties' arguments suggests that this apparent disagreement arises as a result of an oversight rather than a substantive dispute about the appropriate Guidelines calculation.

Specifically, both parties agree that the offense level for Banks' underlying racketeering activity sets the base offense level for his RICO conspiracy offense. (*Id.*); *See also* USSG § 2E1.1 (setting base offense level for RICO offense as the greater of 19 or "the offense level applicable to the underlying racketeering activity"). However, the Government argues that the offense level for Banks' drug conspiracy offense is subject to a one-level upward adjustment "due to [a] multiple counts adjustment with robbery" under USSG § 3D1.4. (ECF No. 2017 at 5.) In Banks' alternative argument, he acknowledges the propriety of this adjustment. (*See* ECF No. 2000 at 12 n.9.) In contrast, his primary argument omits this adjustment without explanation. (*See id.* at 12–13.) It is therefore unclear whether Banks actually contests the application of this adjustment or agrees that the offense level for his racketeering activity should, in fact, be 33.

To the extent that Banks contests the applicability of this adjustment, the Court concludes that the Government is correct because Banks' offense of conviction, Conspiracy to Participate in a Racketeering Enterprise, was based on two Racketeering Acts: (1) Conspiracy to Distribute and Possess With Intent to Distribute Controlled Substances ("Racketeering Act One") and (2) Armed Robbery ("Racketeering Act Two"). *See* PSR at 6–7; (*see also* ECF No. 523 at 5.) Under the Applications Notes for USSG § 2E1.1, "[w]here there is more than one underlying offense [to a RICO conviction], treat each underlying offense as if contained in a separate count of conviction for purposes of [determining the offense level applicable to the underlying racketeering activity]." USSG § 2E1.1, Application Note 1. Thus, the Combined Offense Level Guidelines are applicable to determining the base offense level for Banks' RICO conspiracy conviction. *See* USSG § 3D1.4.

In determining the combined offense level of the two Acts, the Court must first determine whether they are "closely related counts" under USSG § 3D1.2. The Racketeering Acts plainly do not involve "substantially the same harm" as required by that section and therefore fall in

different "Groups" for purposes of § 3D1.4. As the Group with the highest offense level, Racketeering Act One is "[c]ount[ed] as one Unit." USSG § 3D1.4(a).

Neither side disputes that Racketeering Act Two continues to have an adjusted offense level of 26. (*See* ECF No. 523 at 5); PSR ¶ 27. Racketeering Act Two is therefore "5 to 8 levels less serious than the Group with the highest offense level" and is counted as one-half Unit. *Id.* § 3D1.4(b). Thus, Banks has 1 ½ Units under § 3D1.4 resulting in a combined offense level of 33 representing a one level adjustment from the offense level of the more serious offense. *Id.* The parties agree that this adjusted offense level is subject to a three-level downward adjustment for acceptance of responsibility under USSG § 3E1.1, resulting in a final offense level of 30. (*See* ECF No. 2000 at 13; ECF No. 2017 at 5.) Combined with Banks' criminal history category of V[2] this results in a Guidelines Sentencing range of 151-188 months under presently applicable law.[3]

***B. Section 3553(a) Factors***

In addition to intervening law, the Court must also reassess the § 3553(a) factors in determining the propriety and extent of a sentence reduction under Section 404. *See Lancaster*, 997 F.3d at 175. Of course, one of these factors is "the sentencing range established for [ ] the applicable category of offense committed by the applicable category of defendant as set forth in

---

[2] Banks appears to argue that he should continue to be sentenced under criminal history category VI. (*See* ECF No. 2000 at 14.) However, the Government points out that this criminal history category was driven by his now-obsolete career offender enhancement. (*See* ECF No. 2017 at 5 n.2); *see also* USSG § 4B1.1(b). The Court agrees with the Government and appreciates its attention to ensuring that Banks receives an accurate resentencing in a matter with significant complexity.

[3] The Court notes that this dramatic reduction in the applicable Guidelines range would likely constitute "extraordinary and compelling reasons" warranting compassionate release under 18 U.S.C. § 3582(c)(1)(A). As this Court has previously observed, "[d]istrict courts in this circuit have universally affirmed that 'the fact that a defendant, if sentenced today for the same conduct, would likely receive a dramatically lower sentence than the one he is currently serving, constitutes an extraordinary and compelling reason justifying potential sentence reduction under § 3582(c)(1)(A)(i)." *United States v. Elzey*, Crim. No. JKB-09-0288, 2022 WL 316717, at *2 (D. Md. Feb. 2, 2022) (cleaned up). However, such a conclusion would simply result in an assessment of whether the § 3553(a) factors warranted a sentence reduction—an assessment the Court is already permitted to make under Section 404 of the First Step Act. *See Lancaster*, 997 F.3d at 175. As noted above, because the parties agree that the Court should review the § 3553(a) factors under the First Step Act, the Court does not ultimately resolve the parties' disagreement regarding whether compassionate release would provide an independent grounds for reaching the same analysis.

the guidelines." 18 U.S.C. § 3553(a)(4)(A). The Court also finds that two significant, and cross-cutting, factors weigh heavily in its § 3553(a) analysis: the nature and circumstances of the offense and Banks' rehabilitation. Combined with the remaining factors proffered by the parties, the Court concludes that a sentence at the top of the revised Guidelines sentencing range is "sufficient, but not greater than necessary, to comply with the purposes" of incarceration. *See* 18 U.S.C. § 3553(a).

***1. Nature and Circumstances of the Offense***

Predominating in the Court's analysis is the seriousness of the conduct underlying Banks' offense of conviction. This conduct is implicated by several § 3553(a) factors, including "the nature and circumstances of the offense[;]" "the need for the sentence imposed to reflect the seriousness of the offense . . . and to provide just punishment[;]" as well as the need to "afford adequate deterrence of criminal conduct." *See* 18 U.S.C. § 3553(a)(1), (2)(A), (2)(B).

As discussed, Banks' offense of conviction involved the trafficking of significant quantities of cocaine base and heroin. PSR ¶ 15. Banks compounded the harm of this trafficking by engaging in repeated violence against his community, admitting in his Plea Agreement that he "participated in numerous armed robberies of victims in Maryland." (ECF No. 523 at 4.) During these robberies, Banks "would use firearms to rob victims and businesses[, ] obtaining money, jewelry, firearms, and narcotics." (*Id.*) The Court cannot overstate the seriousness of this sort of recurrent violence in support of drug trafficking. Indeed, were this the only evidence before the Court, it would very likely conclude that the upwardly-variant sentence of 226 months requested by the Government was appropriate. (*See* ECF No. 2017 at 18.)

***2. Rehabilitation***

However, the Court ultimately rejects this conclusion based on the significant evidence of rehabilitation that Banks presents. In fact, the Government observes that it "cannot think of

another case in which the defense has provided as many character reference letters as in this case." (ECF No. 2017 at 13.) In addition to their quantity, the Court finds meaningful both their quality and their source. Banks has received letters in support from other incarcerated persons, from his family, and from the staff at United States Penitentiary ("USP") Pollock where he is presently incarcerated. (*See* ECF Nos. 2000-1–2000-39.) These letters repeatedly attest to the effort Banks has made to rehabilitate himself while in prison and how those efforts have helped him become a hardworking, responsible person who is trusted as a leader by both inmates and staff at USP Pollock. (*See*, *e.g.*, ECF No. 2000-1 (letter from C. Brown, Cook Supervisor at FCC[4] Pollock, explaining that "[Banks] is the lead inmate employee here at FCC Pollock [and] displays leadership, respect, and dedication with every task."); ECF No. 2000-36 (letter from a former inmate at USP Pollock describing Banks as "one of the individuals who help[s] keep the peace among the inmate population [and who is] often called upon by staff and inmates to help resolve a matter that may otherwise turn violent."). This personal growth is also reflected by Banks' disciplinary history, which the Government aptly describes as "virtually non-existent, save a fighting violation almost five years ago." (ECF No. 2017 at 13; *see also* ECF No. 2001-6.) Further, Banks has not only improved himself, but he has also helped his fellow inmates as a mentor in the Challenge Program, a "cognitive-behavioral, residential treatment program developed for male inmates in penitentiary settings[,]" *see* U.S. Department of Justice Federal Bureau of Prisons, Psychology Treatment Programs (Mar. 16, 2009), that he himself completed in 2019. (*See* ECF No. 2000-1 at 27–30 (describing Banks' time in the Challenge Program as both a participant and mentor).)

[4] FCC refers to the Federal Correctional Complex, Pollock which includes both USP Pollock and the Federal Correctional Institute, Pollock. *See* Federal Bureau of Prisons, *Our Locations* (last accessed April 1, 2022), *available at*: https://www.bop.gov/locations/search.jsp?q=FCC+Pollock&name=Pollock&facilityType=FCC.

This substantial evidence of rehabilitation convinces the Court that "the history and characteristics of the defendant" counsels against the sentence militated for by "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). Various other related sentencing factors such as "the need for the sentence imposed . . . to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training" similarly favor a lower sentence based on Banks' rehabilitation.

***3. Sentencing Disparities with Codefendants***

The last major factor that Banks highlights is the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3583(a)(6); (*see also* ECF No. 2000 at 37–40.) He notes that several of his codefendants have received post-conviction sentencing reductions that leave Banks' present sentence as an outlier among putatively comparable codefendants. (ECF No. 2000 at 37–40.) The Governments responds that these comparisons are largely inapposite as "§ 3553(a)(6) is aimed primarily at eliminating national sentencing inequity, not differences between the sentences of co-conspirators." *See United States v. Smith*, 836 F. App'x 149, 152–53 (4th Cir. 2020) (citing *United States v. Withers*, 100 F.3d 1142, 1149 (4th Cir. 1996)).

Further limiting the utility of these comparisons are the unique factual and procedural aspects of each codefendants' original and revised sentences. *See, e.g., United States v. Saulsbury*, 479 F. Supp. 3d 225, 227 (D. Md. 2020) (reducing to 180 months sentence of codefendant originally sentenced to life imprisonment for "conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine" where life sentence was driven by career offender and § 851 enhancements). Accordingly, while the Court acknowledges the sentences received by

Banks' codefendants, these sentences do not factor significantly into its determination of the appropriate sentence for Banks based on the unique facts of his case.

***4. Other Factors and Conclusion***

In addition to these major factors, other facets of Banks' case also cut both for and against him in determining an appropriate sentence. On the one hand, Banks emphasizes his traumatic childhood, which was fraught with abuse, drugs, and instability, as well as his age—only 21 years old—when convicted of the present offense. (*See* ECF No. 2000 at 18–25.) In contrast, the Government urges the Court to consider Banks' substantial criminal history prior to the instant offense—though it acknowledges that Banks' prior offenses "include[d] little or no violence." (*See* ECF No. 2017 at 14–15.) While the Court acknowledges and accounts for these factors, it believes that they are largely ancillary to the main considerations discussed above. For example, while Banks' age at the time of conviction suggested his potential to mature while incarcerated, his actual behavior confirms that he has fulfilled this potential. Accordingly, while the Court gives these factors due weight, its conclusion regarding the balance of the § 3553(a) factors remains largely driven by (1) the nature of the offense of conviction and (2) the significant evidence of Banks' rehabilitation while incarcerated.

Weighing these facts, as well as all the other facts and factors required by 18 U.S.C. § 3553(a), the Court concludes that a sentence at the top end of Banks' revised Guidelines range constitutes "a sentence sufficient, but not greater than necessary, to comply with the purposes" of incarceration. Banks' sentence shall therefore be reduced to 188 months' imprisonment.

### *III. Conclusion*

For the foregoing reasons, the Court concludes that a sentence of 188 months' imprisonment promotes respect for the law, deters crime, protects the public, and is "sufficient but not greater than necessary" to comply with the purposes of incarceration. 18 U.S.C. § 3553(a).

Accordingly, it is hereby ORDERED:

1. Banks' Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582 Or, Alternatively, for Sentencing Reduction Pursuant to Section 404 of the First Step Act (ECF Nos. 1998, 2000) is GRANTED IN PART;
2. An Amended Judgment and Commitment Order will issue, setting the sentence at 188 months' imprisonment;
3. All other terms of the sentence imposed that are not altered by this Memorandum and Order remain in full force and effect and will be reflected in the Amended Judgment and Commitment Order;

DATED this 6 of April, 2022.

BY THE COURT:

James K. Bredar
Chief Judge